Daniel, Judge,
 

 after stating the case as above, proceeded : — It is contended on behalf of the plaintiff, that he is entitled to relief against Wright as well as against Beck, notwithstanding the whole of the assets came to the hands of Beck, and were disposed of by him, because Wright signed the inventory and account of sales, and assented to the sale: for that so far,-he was active in enabling his co-executor to dispose of the assets; and that he ought therefore in this court to be held liable for the
 
 devastavit
 
 of his co-executor.
 

 The devastavit by one of two executors or administrators shall not charge his companion, provided he has not, intentionally or otherwise, contributed to it: for the testator’s having misplaced his confidence in one, shall not operate to the prejudice of the other.
 
 Hargthorpe
 
 v.
 
 Milford,
 
 Cro. Eliz. 318, 319. An executor shall not, under ordinary circumstances, be responsible for the assets come to the hands of his co-executor.
 
 Littlehales
 
 v.
 
 Gascoyne,
 
 3 Bro. Ch. Rep. 73. 2 Will. Ex’rs, 1118. This then, being the rule, Wright could not be held responsible for the assets which his co-executor took into his sole possession, immediately after the death of the tenant for life. Wright being passive, and not obstructing his co-executor from getting the assets into his possession, is not as to that responsible.
 
 Langford
 
 v.
 
 Gascoyne,
 
 11 Ves. 333. The
 
 *340
 
 • foregoing remarks bring us to the inquiry, whether, under the circumstances of this case, Wright, by his assent to the sale, and signing the inventory and account of sales, has made himself liable for that
 
 devastavit.
 
 The signing the inventory could not have that effect, because executors are bound to render an inventory of all the assets which came to their possession or knowledge; because each has authority by the will to take possession of the property, and because Beck had already exercised that authority before the inventory was signed. It was but a formal proceeding, and by no means subjects Wright to the
 
 devastavit
 
 of his co-executor. Is there any additional responsibility thrown on Wright, by his assent to the sale by his co-executor, and signing the account of sales with him to be returned to the County Court ? It is contended for the plaintiff, that the case is within the principle of the rule, that when two executors sign a receipt, and one alone receives the money, both are equally liable for that money. At one period, a well recognised distinction existed between trustees and executors. This distinction was founded on the difference between the power and authority of a co-trustee, and that of a joint executor, viz. that trustees cannot act separately, as executors may, but must join both in conveyances and receipts; and therefore, it may be taken that a co-trustee joins only for conformity. But a co-executor, as it is not necessary for him to join, interferes unnecessarily; he was therefore to be considered as assuming a power over the fund, and consequently, to be answerable for its application, as far as it was connected with the particular trust action in which he joined. Therefore the rule was, that when the executors joined in a receipt, both having the whole power over the whole fund, both were chargeable; but when trustees joined, each not having the whole power, and the joining being necessary, only the person receiving the money was chargeable. 2 Will. Exrs. 1125. One executor in trust, is not answerable for the receipt of the other, merely by taking probate, permitting the other to possess the assets, and joining in acts necessary to enable him to administer. Joining in a receipt, though not absolutely necessary, is
 
 *341
 
 not
 
 conclusive
 
 against an executor, any more than against a trustee, to charge him with the receipt of his co-executor.
 
 Hovey
 
 v.
 
 Blakeman,
 
 4 Ves. 596-605. Again, in
 
 Scurfield
 
 v.
 
 Howes,
 
 3 Bro. Ch. Rep. 90, Sir RichaRD Pepper Arden said, he dissented from the rule as broadlv stated, that if one executor receives the money, and two sign the receipt, both are chargeable, if it appear that the second joined for conformity only. And Lord Redesdale, in
 
 Joy
 
 v.
 
 Campbell,
 
 1 Sch. & Lef. 341, took the distinction to be, that if a receipt be given for the mere purpose of form, then the . . ... , , . . , signing will not charge the person not receiving the money, And the true question in all these cases seems to have 1 been, whether the money was under the control of both executors. If it was so considered by the person paying the money, then the joining in the receipt by the executor who did not actually receive it, amounted to a direction to pay to his co-executor, and he became responsible for the application, just as if he had received it himself. Again, in
 
 Doyle
 
 v.
 
 Blake,
 
 2 Sch. & Lef. 242, it is said, the true consideration in a question of this kind is, whether the executor who merely joins in the receipt, had a control, and his joining in the receipt is evidence of that control, although the money was actually received by the other. The joining in a receipt shall not have the conclusive effect of charging both.
 
 Westley
 
 v.
 
 Clarke,
 
 1 Eden, 357. The relaxation of the rule in favour of executors, has been lamented by Lord Eldon,, but his lordship, in
 
 Walker
 
 v.
 
 Symonds,
 
 3 Swan. 64, alludes to its alteration as having been completely effected, and it. seems to us reasonable and equitable. In the case now before the' court, it appears that Beck took possession of the property, and alone managed the sale: the law required an account of sales to be returned to the court: the signing that account of sale was, we think, merely for conformity, a control over the property is rebutted by the facts of the case, and according to the before-mentioned decisions, does not subject him on that ground to the demand of the plaintiff.
 

 
 *340
 
 Formerly, there was a distinction between co-executors and co-trustees joining in a receipt for money. In the former case, both were held responsible — in the latter, only he who actually received the money.
 

 
 *341
 
 Now the executors joining in'3 a receipt, absolutely1 necessal7> is not con-
 
 elusive
 
 311 executor, anymore ^™nsta trustee, ,tm? these cases thernoney" received control of both executor.
 

 The join-evidence of trol, though itis“ot conclusive.
 

 The last position taken by the plaintiff, is that, by the will of the testator, the two executors were appointed curators of the estate, which was contingently bequeathed
 
 *342
 
 t0 jjjm. that the bond of Ochiltree and Shaw composed a part of that estate: that it was the duty of Wright, as well as of Beck, to see to the collection of that bond : that Wright has been remiss in this part of his duty : that he has been vigilant in getting his own part of the estate, and permitting the other shares belonging to the children of the testator, (including that of his co-executor,) to be paid, and has wholly disregarded the interest of the plaintiff, who was then an infant, and should have been protected by him, as well as by Beck: that although Beck is not insolvent, yet that he is entitled to a decree against both defendants, and that Wright should run the risk of any loss, by the possibility of Beck’s becoming insolvent, and not let that risk fall on him. The true answer to this position may be given almost in the words in which the opinion of this Court was heretofore expressed in the case of
 
 Clark and others
 
 v.
 
 Cotton and others,
 
 2 Dev. Eq. Rep. 51. Wright was indeed a curator or trustee for the plaintiff, but. only for what was in his hands, or had been in his hands, or was under his power and control. Beck was a curator or trustee, with precisely the same powers. If a misplaced confidence was reposed in the latter, it was not the confidence of Wright, but the confidence of the testator. Wright did no act by which, an abuse of that confidence was facilitated. He had no authority to take out of Beck’s hands the property of the
 
 cestui que trust,
 
 which was rightfully there; he never guaranteed the diligence, fidelity or solvency of his co-trustee; and there is no ground in conscience to render him answerable, when he has committed no fault, and broken no engagement.
 

 The bill must be dismissed as against Wright, with costs to be paid by Beck; and the plaintiff is declared entitled to an account against Beck.
 

 Pek Cukiam. Decree accordingly.